UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                      Criminal Case No. 12-20843

Donald Steven Reynolds,                                 Honorable Sean F. Cox

      Defendant.

_____/

**OPINION & ORDER**
**GRANTING THE GOVERNMENT'S MOTION**
**TO EXCLUDE DEFENSE WITNESSES (DOCKET ENTRY NO. 75)**

In this action, Defendant Donald Steven Reynolds ("Defendant") is charged with three

child pornography counts. The matter is currently before the Court on the Government's Motion

to Exclude Defense Witnesses (Docket Entry No. 75), where in the Government asks the Court to

preclude Defendant from calling two alibi witnesses that the Defense failed to disclose pursuant

to Fed. R. Crim. P. 12.1. The parties have briefed the issues and the Court heard oral argument

on June 28, 2013. For the reasons set forth below, the Court shall **GRANT** the motion and

preclude Defendant from calling James Reynolds and Larry Bullock as witnesses at trial, due to

Defendant's failure to comply with Fed. R. Crim P. 12.1(a)(2).

**BACKGROUND**

Defendant is charged with three child pornography counts. The First Superceding

Indictment, filed on March 21, 2013, charges Defendant with the following three counts: 1) "18

U.S.C. § 2252A(a)(2) – Receipt of child pornography" (Count I); "18 U.S.C. § 2252A –

Distribution of child pornography" (Count Two); and "18 U.S.C. § 2252A(a)(5)(B) – Possession of child pornography" (Count Three). (First Superseding Indictment, Docket Entry No. 27). Defendant was indicted following the execution of a search warrant at his home.

Defendant was indicted following the execution of a search warrant at his home.   On May 26, 2011, Federal Bureau of Investigation ("F.B.I.") agents executed a search warrant at Defendant's home on Yorktown Street in Canton, Michigan.  During the search, they seized a computer with a hard drive that contains images of child pornography.

At the time of the search, Defendant was present and so were his two adult children, Andrew Reynolds ("Andrew") and Arica Reynolds ("Arica"), who also resided at the home at that time.  When interviewed, Defendant, Andrew, and Arica all indicated that they use the computer at issue and that Arica's boyfriend, Michael Cook ("Cook"), occasionally spent the night at the home and used the computer.  The Government seeks to establish that it was Defendant, and not one of the other individuals who had access to the computer, who uploaded or downloaded child pornography.

In order to attempt to do so, F.B.I. Computer Forensic Examiner Walker Sharp examined the hard drive and identified seven specific dates and times when child pornography was uploaded or downloaded on the computer during the month of May 2011 ("the Relevant Time Periods").  The F.B.I. then obtained cell phone records for the cell phone numbers that allegedly belong to Defendant, Andrew, Arica, and Cook.

On March 19, 2013, the Government provided Defense Counsel with the report of the Government's expert witness, Special Agent Christopher Hess.  (*See* Ex. A to Opinion & Order, letter enclosing report; *see also* Docket Entry No. 39-1, Special Agent Hess's report).  The

Government notified Defendant that it would call F.B.I. Special Agent Christopher Hess to testify at trial as an expert in historical cell site analysis.  Special Agent Hess would testify that the cell phone that belongs to Defendant had call activity during the Relevant Time Periods that was consistent with the phone being in the general area of the residence on Yorktown in Canton, Michigan, and that the cell phones belonging to Arica, Andrew, and Cook did not have call activity during the Relevant Time Periods that was consistent with those phones being in the general area of the residence.

On March 19, 2013, the Government requested from Defendant written notice of intention to offer a defense of alibi, stating:

> Finally, the government renews its request for reciprocal discovery and notice of alibi.  Specifically, pursuant to Federal Rule of Criminal Procedure 12.1, the United States demands written notice of intention to offer a defense of alibi, stating specifically the place or places at which the defendant claims to have been for the following dates and times:
>
> • May 6, 2011, between 17:08 and 18:07;
> • May 12, 2011, between 17:55 and 22:56;
> • May 13, 2011, between 19:01 and 19:46;
> • May 18, 2011 at 14:24;
> • May 23, 2011 at 21:42 and 22:23;
> • May 24, 2011 between 7:01 and 7:40, and 17:05;
> • May 25, 2011 between 16:50 and 17:59.
>
> The Government requests the names, address, and phone numbers of witness upon whom the defendant intends to rely.

(Ex. A to Opinion & Order).

Pursuant to this Court's March 27, 2013 Order, trial was to commence on June 18, 2013.

(Docket Entry No. 31).

On June 17, 2013 – the day before trial was to begin – Defense Counsel provided the

3

Government with a witness list that identified two expert witnesses: 1) Mike Cherry; and 2) Manfred Schenk.  Because the Government had not been provided with an expert report or disclosures regarding either of those individuals, on June 17, 2013, the Government filed a Motion in Limine seeking to preclude Defendant's experts from testifying at trial.  (Docket Entry No. 63).

In response to that motion, Defense Counsel filed a "Notice of Expert Testimony" on the evening of June 17, 2013,[1] purporting to give notice of Defendant's proposed expert testimony. (Docket Entry No. 65).  Defendant's response brief did not dispute that the Government had previously requested expert disclosures, nor did it provide any explanation as to why Defense Counsel was providing disclosures on the eve of trial.

In addition to objecting to Defendant's disclosures as untimely, the Government also asserted that the notice was deficient in that it did not provide the Government with the bases and reasons for Mr. Schenk's opinions.  Nevertheless, during the course of the trial, the Government was provided additional information and ultimately withdrew its motion seeking to preclude Mr. Schenk from testifying.

On June 18, 2013, the jury was selected and sworn.  During jury selection, both the Government and the Defense read the names of their potential witnesses to the jury pool, to determine if the potential jurors knew any of the witnesses.  Neither James Reynolds nor Larry Bullock were among the names identified by the Defense.

The Government had F.B.I. Special Agent Christopher Hess testify at trial as an expert in

---

[1]Defendant's filing indicated that Defense Counsel provided the information regarding Mr. Schenk  "via e-mail at approximately 5:21 p.m. on June 17, 2013." (*Id*. at 1).

historical cell site analysis. Special Agent Hess was called as a witness on Monday, June 24, 2013, and his testimony ultimately concluded on Tuesday, June 25, 2013.

After trial had concluded for the day on June 26, 2013, the Court held a conference in chambers regarding the trial schedule. During that conference, the Government advised that Defense Counsel had recently provided a new witness list that included two individuals whose names had not been read to the jury during jury selection – James Reynolds and Larry Bullock. The Court then inquired about the nature of the expected testimony from those individuals, and the expected length of their testimony. In response to the Court's inquiry, Defense Counsel stated that James Reynolds (who is Defendant's brother) and Larry Bullock worked for or with Defendant as painters and that they are expected to testify that Defendant was with them at Oakwood Hospital in Canton, Michigan on dates and times during May of 2011.

Thereafter, on June 26, 2013, the Government filed the instant motion seeking to preclude James Reynolds and Larry Bullock as witnesses at trial, due to Defendant's failure to comply with the notice provisions of Fed. R. Crim. P. 12.1.

## ANALYSIS

It is well-established that, "[g]iven the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida*, 399 U.S. 78, 81 (1970). As the United States Supreme Court has explained, "[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Id*. at 82.

Accordingly, Rule 12.1 of the Federal Rules of Civil Procedure provides that an "attorney for the government may request in writing that the defense notify an attorney for the government

of any intended alibi defense.  The request must state the time, date, and place of the alleged

offense." Fed. R. Crim. P. 12.1(a)(1).  Rule 12.1 further provides:

> (2) Defendant's Response. *Within 14 days after the request*, or at some other time
> the court sets, the defendant must serve *written notice* on an attorney for the
> government of any intended alibi defense.  The defendant's notice must state:
> > (A) each specific place where the defendant claims to have been at the
> > time of the alleged offense; and
> > (B) the name, address, and telephone number of each alibi witness on
> > whom the defendant intends to rely.

Fed. R. Crim. P. 12.1(a)(2) (emphasis added).  Rule 12.1 also provides that the defendant has a

continuing duty to disclose alibi witnesses.  Fed. R. Crim. P. 12.1(C).  Rule 12.1 provides that if

a party fails to comply with the rule, "the court may exclude the testimony of any undisclosed

witness regarding the defendant's alibi."  Fed. R. Crim. P. 12.1(e).

Thus, under Rule 12.1, "the court may exclude witnesses as a sanction for violation of the

notice provisions of the rule, and a district court's decision to exclude witnesses is reviewed for

abuse of discretion." *United States v. Watt*, 996 F.2d 1218, 1993 WL 190912 (6th Cir. 1993);

*see also United States v. White*, 583 F.2d 899, 901-02 (6th Cir. 1978).  Among the factors that

should guide a district court's exercise of discretion in determining whether to exclude

undisclosed alibi witnesses are: 1) the prejudice to the government from the failure to disclose; 2)

the reasons for nondisclosure; 3) the extent that harm from nondisclosure is mitigated by

subsequent events; and 4) the weight of evidence supporting the defendant's guilt.  *Id.*

In the present case, the Government requested in writing – on March 19, 2013 – that

Defendant notify it of any intended alibi witnesses.  (Ex. A to Opinion & Order).   As Defense

Counsel acknowledged at the June 28, 2013, the Defense *has never* submitted a written response

to that notice to the Government.

In fact, the Government only learned of the Defendant's intention to present James Reynolds and Larry Bullock as alibi witnesses during a conference in chambers, and only in response to an inquiry by the Court as to the expected nature and length of their testimony. In response to the Court's inquiry, Defense Counsel stated that James Reynolds (Defendant's brother) and Larry Bullock worked for or with Defendant as painters and that they are expected to testify that Defendant was with them at Oakwood Hospital in Canton, Michigan on dates and times during May of 2011.

The Government then filed the instant motion. In response to the motion, Defendant asserts that the Government's request for alibi disclosures was "deficient" because the dates and times of the alleged offense that were provided were not specific enough. Defendant relies on *United States v. Bickman*, 491 F. Supp. 277 (E.D. Penn. 1980).

The Court finds Defendant's argument that the Government's request was deficient, and his reliance on *Bickman*, to be wholly without merit. The Government's request for alibi disclosures stated:

> Finally, the government renews its request for reciprocal discovery and notice of alibi. Specifically, pursuant to Federal Rule of Criminal Procedure 12.1, the United States demands written notice of intention to offer a defense of alibi, stating specifically the place or places at which the defendant claims to have been for the following dates and times:
>
> • May 6, 2011, between 17:08 and 18:07;
> • May 12, 2011, between 17:55 and 22:56;
> • May 13, 2011, between 19:01 and 19:46;
> • May 18, 2011 at 14:24;
> • May 23, 2011 at 21:42 and 22:23;
> • May 24, 2011 between 7:01 and 7:40, and 17:05;
> • May 25, 2011 between 16:50 and 17:59.

7

> The Government requests the names, address, and phone numbers of witness upon whom the defendant intends to rely.

(Ex. A to Opinion & Order).  That request could not have been any more specific as to the dates and times provided.  And unlike the situation in *Bickman*, the Government's request did not state vague or excessively long periods of time such that the request was, as a practical matter, akin to a broad discovery request or "fishing expedition." [2]

Accordingly, the Court finds that the Government filed a request for alibi disclosures in compliance with Fed. R. Crim. P. 12.1 but Defendant failed to comply with the rule.

The Government asks the Court to preclude James Reynolds and Larry Bullock from testifying at trial, as a sanction for Defendant's failure to the comply with the rule.  In considering that request, the Court first considers the prejudice to the Government from Defendant's failure to disclose.  The Government asserts that there is significant prejudice to the Government under the circumstances presented here:

> With no notice or information, the government has not been able to interview the alibi witnesses, investigate the validity to the alibi, seek witnesses to rebut the alibi, and subpoena any documents or records related to the alibi.  Most importantly, the government has not been able to analyze the cell phone records at issue in this case to disprove Defendant's alibi.  Oakwood Hospital, where the Defendant now claims he was working, is not in an area served by the cell tower sectors closest to Defendant's home.  However, because the government has already rested, the Government was not able to present evidence through Special Agent Hess about the physicial location of Oakwood Hospital and the cell tower sectors that service that location.  Had Defendant provided proper notice of his alibi defense, the government would have used that information when analyzing

---

[2]*Bickman* can further be distinguished because the defendant in that case, after receiving a request for alibi disclosures that he deemed deficient, made a pretrial objection to the request. Here, Defendant did not do so.

his cell phone records. Agent Hess would have testified about Oakwood Hospital and the cell towers that service that location.

(Govt.'s Br. at 4). The Court agrees that the prejudice to the Government, under the circumstances presented here, is significant and weighs heavily in favor of excluding James Reynolds and Larry Bullock.

Moreover, the extent that harm from nondisclosure is mitigated by subsequent events also weighs in favor of precluding the alibi witnesses from testifying at trial. Simply stated, there are no subsequent events that mitigate the prejudice to the Government.

The Court also considers Defendant's reasons for the nondisclosure. Again, the Court finds Defendant's argument that the Government's request was somehow "deficient" to be wholly without merit, especially in light of the fact that the Defense never made a pretrial objection to the request. The Court also finds the other reasons that the Defense offers for failing to comply with Rule 12.1 unpersausive.

First, Defense Counsel asserts that no disclosure was provided because the two witnesses at issue are not really alibi witnesses "in the true sense of the word" because they may not be able to testify as to specific times on the dates at issue. The Court disagrees. It is clear to this Court that the Defense wishes to call the two witnesses at issue in order to establish that Defendant was at Oakwood Hospital, rather than at the residence at issue where child pornography was being downloaded, on the relevant dates.

Second, Defense Counsel asserts that they did not learn of these alibi witnesses until June 21, 2013, when Defendant advised them about these witnesses and his alleged painting job at Oakwood Hospital back in May of 2011, and therefore the Court should not preclude the

9

witnesses from testifying.

Under the facts presented here, however, the Court finds that both Defendant and Defense Counsel failed to act diligently. The Defense has been aware of the relevant dates and times at issue (i.e., those in May of 2011) since at least March 19, 2013.

The very nature of Defendant's alleged alibi (ie., Defendant being physically present at a painting job at Oakwood Hospital with his brother and Larry Bullock on the dates at issue) is such that *Defendant himself* would have known of it, and had the ability to make any appropriate inquiries, long before trial. *See United States v. Pearson*, 159 F.3d 480, 483-84 (10th Cir. 1998). This is especially so given that one of the alibi witnesses is Defendant's own brother.

In addition, Defense Counsel asserts that he learned of these alibi witnesses on June 21, 2013. At that time, the Government was still presenting its case in chief and the Government had not yet called Special Agent Hess to testify. Despite being aware that Defendant wished to call James Reynolds and Larry Bullock as alibi witnesses, Defense Counsel chose not to provide any notice whatsoever – verbally or in writing – to the Government about the nature of the expected testimony of these witnesses. Indeed, the Government only learned of the Defendant's intention to present James Reynolds and Larry Bullock as alibi witnesses during a June 26, 2013 conference in chambers, and only in response to an inquiry by the Court as to the expected nature and length of their testimony. But by that time, Special Agent Hess had already testified and the Government had completed its case in chief.

In sum, the Defense has not shown good cause for Defendant's failure to comply with Rule 12.1(a)(2). To the contrary, this Court concludes that it certainly appears that the Defense elected not to make the disclosures required by Rule 12.1 for *strategic reasons.*

10

The final factor to consider is the weight of the evidence supporting the defendant's guilt. While the evidence of guilt is not overwhelming, this Court concludes that a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Thus, the Court finds this factor neutral in the analysis.

Having considered all of the above factors, this Court concludes that the appropriate sanction for Defendant's failure to comply with Fed. R. Crim P. 12.1 is to preclude the Defense from calling James Reynolds and Larry Bullock as witnesses at trial.

### CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED** that the Government's Motion to Exclude Defense Witnesses (Docket Entry No. 75) is **GRANTED** and that the Defense is precluded from calling James Reynolds and Larry Bullock as witnesses at trial.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: June 28, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 28, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager