UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

      Plaintiff,

v.                                                          Case No. 12-20843

Donald Steven Reynolds,                    Sean F. Cox
                                                            United States District Court Judge
      Defendant.

_____/

## OPINION & ORDER

In this action, Defendant Donald Steven Reynolds ("Defendant") was charged with three

child pornography counts.  On July 3, 2013, the jury returned guilty verdicts as to all three

counts.  Defendant is scheduled to be sentenced by this Court on October 30, 2013.

The matter is currently before the Court on the following four motions: 1) the

Government's Motion To Detain Defendant Pending Sentencing (Docket Entry No. 87); 2) a

Motion Renewing Defendant's Motion For Judgment Of Acquittal (Docket Entry No. 93); 3)

Defendant's Motion for New Trial (Docket Entry No. 94); and 4) Defendant's Motion To Modify

Bond Address (Docket Entry No. 104).  The parties have briefed the issues and the Court heard

oral argument on the Government's Motion to Detain on July 25, 2013.  The Court finds that the

issues have been adequately presented in the parties' briefs and that oral argument on the

remaining motions would not aid the decisional process.  *See* Local Rule 7.1(f)(2), U.S. District

Court, Eastern District of Michigan.  The Court therefore orders that the motions will be decided

upon the briefs, without further oral argument.

For the reasons set forth below, the Court shall DENY Defendant's Renewed Motion for Judgment of Acquittal and his Motion for New Trial. The Court shall also GRANT the Government's Motion to Detain Defendant Pending Sentencing, REVOKE DEFENDANT'S BOND, and ORDER DEFENDANT REMANDED to the custody of the United States Marshal. Finally, given that the Court is revoking Defendant's bond, the Court shall also DENY Defendant's Motion To Modify Bond Address.

## PROCEDURAL BACKGROUND[1]

Defendant was charged with three child pornography counts in this matter. The First Superceding Indictment, filed on March 21, 2013, charged Defendant with the following three counts: 1) "18 U.S.C. § 2252A(a)(2) – Receipt of child pornography" (Count I); "18 U.S.C. § 2252A(a)(2) – Distribution of child pornography" (Count Two); and "18 U.S.C. § 2252A(a)(5)(B) – Possession of child pornography" (Count Three). (First Superseding Indictment, Docket Entry No. 27). A jury trial commenced on June 21, 2013.

On June 25, 2013, Defendant filed a Motion for Judgment of Acquittal, pursuant to Fed. R. Crim. Pro. 29. (Docket Entry No. 73). This Court denied that motion in an Order issued on June 28, 2013. (Docket Entry No. 78).

On July 3, 2013, the jury returned a guilty verdict as to all three counts. Defendant is scheduled to be sentenced on October 30, 2013. After the jury delivered its verdict, the Government made an oral motion to detain Defendant pending sentencing. The Court denied that request without prejudice, directing the Government to file a written motion with authority

_____

[1]The factual background concerning the charges in this case is set forth in several prior opinions and orders issued by this Court and need not be restated here. (*See, e.g.*, Docket Entry Nos. 55 & 80).

2

supporting its request.

On July 5, 2013, the Government filed its written Motion To Detain Defendant Pending Sentencing. (Docket Entry No. 87). Defendant filed a response to that motion on July 19, 2013.

In addition, on July 17, 2013, Defendant filed: 1) a "Motion Renewing Defendant's Motion For Judgment Of Acquittal" (Docket Entry No. 93); and 2) a Motion for a New Trial (Docket Entry No. 94). The Government has since responded to both of those motions.

On August 3, 2013, Defendant filed a motion seeking to modify his bond address. (Docket Entry No. 104).

## ANALYSIS

### I.      Defendant's Renewed Motion For Judgment Of Acquittal

On June 25, 2013, Defendant filed a Motion for Judgment of Acquittal, pursuant to Fed. R. Crim. Pro. 29.  This Court denied that motion in an Order issued on June 28, 2013.

On July 3, 2013, the jury returned a guilty verdict as to all three counts. Following that verdict, on July 17, 2013, Defendant renewed his motion for judgment of acquittal. (Docket Entry No. 93).

In considering a motion for judgment of acquittal under FED. R. CRIM. P. 29, this Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the elements of the crime beyond a reasonable doubt. *United States v. Abner,* 35 F.3d 251, 253 (6th Cir. 1994); *United States v. Meyer*, 359 F.3d 820, 826 (6th Cir. 1979). In doing so, the Court does not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *Id.* On review, all evidence must be construed in a manner most favorable to the Government. The Sixth Circuit

3

has explained that a defendant claiming insufficiency of the evidence "bears a very heavy

burden." *Abner,* 35 F.3d at 253; *United States v. Ramirez*, 635 F.3d 249, 256 (6th Cir. 2011)

("This standard is a great obstacle to overcome.").

As explained below, this Court continues to believe that Defendant has not met that

burden.

In his motion, Defendant continues to assert that the evidence was insufficient to establish

his guilt beyond a reasonable doubt because no eyewitness could place Defendant at the

computer keyboard at the times that the illegal images were downloaded or shared on

Defendant's computer.  It is well established, however, that "[c]ircumstantial evidence alone is

sufficient to sustain a conviction and such evidence need not 'remove every reasonable

hypothesis except that of guilt.'"  *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989)

(quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).  As summarized in the

Government's response brief, at trial the Government presented sufficient circumstantial

evidence that Defendant received, distributed, and possessed child pornography.

Having considered Defendant's renewed motion, and viewing the evidence presented in

the light most favorable to the prosecution, this Court continues to conclude that a rational trier

of fact could find the essential elements of the crimes beyond a reasonable doubt.  Accordingly,

the Court shall deny Defendant's renewed motion for judgment of acquittal.

## II.    Defendant's Motion For New Trial

A motion for new trial is governed by Rule 33 of the Federal Rules of Criminal

Procedure.  That Rule provides that upon the defendant's motion, a district court "may vacate

any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).

4

**A.     Is A New Trial Warranted Because The Evidence Preponderates Heavily Against The Verdict?**

Defendant's motion first asserts that this Court should grant him a new trial based on the insufficiency of the Government's evidence.  (Def.'s Br. at 2).  Defendant devotes little time to developing this argument, stating that "[t]he reasons supporting this argument can be found in the defendant's previously filed motion for a judgment of acquittal."  (*Id.*).

"When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the district court may weigh the evidence and assess the credibility of the witnesses; '[i]t has often been said that [the trial judge] sits as a thirteenth juror' when considering a Rule 33 motion.*"  United States v. Matthew*, 298 Fed. App'x. 460, 465 (6th Cir. 2008) (quoting *United States v. Solorio*, 337 F.3d 580, 589 n.6 (6th Cir. 2003)).

"Nevertheless, granting a Fed. R. Crim. P. 33 Motion for New Trial attacking the weight of the evidence is a discretionary matter.  The Court should exercise such discretion only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir. 1988); *see also United States v. Montgomery*, 358 Fed. App'x. 622, 628 (6th Cir. 2009).

This Court has already addressed and rejected Defendant's arguments that the evidence presented at trial was insufficient to sustain his convictions.  This Court also concludes that this is not one of those extraordinary circumstances where the evidence preponderates heavily against the verdict.

**B.      Is Defendant Entitled To A New Trial Based On Claims Of Legal Error?**

"[I]t is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). Here, Defendant asks the Court to grant him a new trial based on several alleged legal errors, which are addressed below.

**1.      Ruling Allowing The Government To Present Rebuttal Testimony**

First, Defendant contends that this Court erred in allowing the Government to present a rebuttal witness, Joseph Smyk, an engineer employed with Ericcson, the company that maintains the cell phone towers for Nextel. Defendant directs the Court to his objections asserted during the trial.

In objecting to the Government calling Mr. Smyk as a rebuttal witness, Defendant argued that the Court should not permit him to testify because: 1) his rebuttal testimony would be improper because it is not being offered to contradict new evidence or a new theory; 2) the rebuttal evidence would be improper because the Government could have presented it in its case in chief; 2) the Government did not give Defense prior notice that it would be calling Mr. Smyk as a rebuttal witness and therefore Defense Counsel could not effectively cross-examine him.

**a.      The Rebuttal Witness Was Offered To Contradict New Evidence Or A New Theory**

In the exercise of sound discretion, the district court may limit the scope of rebuttal testimony "to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief." *Martin v. Weaver*, 666 F.2d 1013, 1020 (6th Cir. 1981).

"'The proper function of rebuttal evidence is to contradict, impeach or defuse the impact

6

of the evidence offered by an adverse party.'" *United States v. Bland*, 2007 WL 2781114 (6th Cir. 2007) (quoting *United States v. Levy*, 904 F.2d 1026, 1031 (6th Cir. 1990)).  A "district judge has discretion to limit rebuttal evidence 'to that which is directed to rebut new evidence or new theories proffered in the defendant's case-in-chief.'" *Bland, supra* (quoting *Toth, supra*). "Evidence or theories offered by the defendant are 'new' for rebuttal purposes 'if, under all the facts and circumstances, . . . the evidence was not fairly and adequately presented to the trier of fact before the defendant's case-in-chief.*" Toth v. Grand Trunk Railroad*, 306 F.3d 335, 345 (6th Cir. 2002) (citations omitted).

This Court continues to believe that Mr. Smyk's testimony was classic rebuttal testimony. That is, his testimony was offered to rebut Mr. Schenk's expert testimony offered by the defense at trial.  Among other things, Mr. Schenk testified that call detail records do not provide reliable information about the general location of a cell phone because that phone may use cell phone towers that are located twenty or thirty miles away.  Mr. Smyk, who was one of the individuals who built the Nextel network at issue, testified as to how the network was designed and how it operates.  He testified that while it is theoretically possible for a given cell phone to use a tower that is located twenty miles away, that is not likely, and that ninety percent of the time when a given phone makes a call, it will use the cell phone tower that is the closest tower.

> **b.** **Even If The Rebuttal Evidence Could Have Been Offered In The Government's Case-In-Chief, That Would Not Preclude Its Admission In Rebuttal**

A "district court's discretion to exclude proffered rebuttal testimony is not unlimited." *Id*.  The Sixth Circuit has explained that:

> "[W]here . . . the evidence is real rebuttal evidence, the fact that it might have

7

been offered in chief does not preclude its admission in rebuttal.  Furthermore, with respect to 'real rebuttal evidence,' the plaintiff has no duty to anticipate or to negate a defense theory in plaintiff's case-in-chief."  *Martin*, 666 F.2d at 1020.

*Toth*, 306 F.3d at 345.  These concepts are illustrated by the Sixth Circuit's discussion of their

application in *Benedict*:

> Our decision in *Benedict* illustrates the parameters of district courts' discretion to exclude rebuttal testimony. In *Benedict,* the plaintiff claimed that she contracted a serious disease as a result of a swine-flu vaccination administered by the government.  In her case-in-chief, plaintiff presented an expert who relied principally on clinical observation and that the temporal connection between the vaccination and the onset of the disease to prove causation.  *Id*. at 1428.  The government, in its case, presented experts who testified that a causal relationship could only be established through epidemiological data, not clinical observation, and that the epidemiological data refuted plaintiff's theory of causation.  *Id.* at 1428-29.  Plaintiff sought to introduce expert testimony on rebuttal to show that the epidemiological data cited by the defense experts was inaccurate and that the data was actually consistent with the plaintiff's theory.  The district court excluded the rebuttal testimony because it "logically belonged in the case-in-chief and went to the case's central issue of causation."  *Id.* at 1428.  We reversed.  We explained that although the evidence was relevant to causation, the plaintiff was not required to present any particular theory of causation in her case-in-chief, and it was permissible to choose to present only the clinical theory and then rebut the new epidemiological theory after it was presented by the defense.  *Id.* at 1429.  We noted that "[a]lthough the epidemiological evidence was not 'new' since the parties knew of its existence prior to trial, it was new for rebuttal purposes."  *Id*.  We further explained that "[u]nder the law of this Circuit the [plaintiff] had no duty to anticipate the government's defense or to negate in its own case-in-chief a theory that would later be raised by the government."  *Id*. at 1429-30.

*Toth*, 306 F.3d at 345-46.

Accordingly, the Court rejects Defendant's position that the rebuttal evidence was

improperly admitted because the Government could have presented it in its case in chief.

### c.    Lack Of Notice Of Rebuttal Witness

Defendant contends that the Court erred in allowing the Government to call Mr. Smyk as

a rebuttal witness because the Government did not give Defense Counsel sufficient notice of that

8

witness.  Defendant, however, has not identified any rules or case law that requires the Government to identify potential rebuttal witnesses.

Rule 16 requires the Government to make disclosures regarding expert witnesses it intends to present "during its *case-in-chief* at trial."  Fed. R. Crim. P. 16(a)(G) (emphasis added). Mr. Smyk's testimony was not part of the Government's case-in-chief; it was offered to rebut the testimony of Defense expert Manfred Schenk.  "'Rebuttal witnesses are a recognized exception to all witness disclosure requirements.'" *United States v. DiCarlantonio*, 870 F.2d 1058, 1063 (6th Cir. 1989) (quoting *United States v. Windham*, 489 F.2d 1389, 1392 (5th Cir. 1974)); *see also United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004) (explaining that the case law "establishes that, consistent with Rule 16, the government's presentation of rebuttal testimony without prior notice does not violate Rule 16, since the Rule's notice requirements apply only to the government's case-in-chief.").

The Court also finds Defendant's reliance on *Chin* , to support his assertion that this Court's ruling constitutes a due process violation, misplaced.  That case can readily be distinguished from the circumstances presented here.  Notably, *Chin* involved a retrial.  *United States v. Tin Yat Chin*, 476 F.3d 144 (2d Cir. 2007).  "Well before the start of the second trial," the defense had indicated its intent to call a handwriting expert and had made all of the expert disclosures required by Rule 16.  *Id*. at 146.  Prior to trial, the Government had already retained its handwriting expert that it planned to use in rebuttal.  The government did not disclose that it had retained that expert, or his expected rebuttal testimony, until the day before the defense rested.

The Second Circuit stated that the government's "nondisclosure, though regrettable, did

9

not rise to a due process violation." *Id.* at 146. It did, however, criticize the government's nondisclosure as a "sharp practice," in light of the circumstances presented there. The Court stated that although there was no Rule 16 violation, "it does not follow that the Government has *carte blanche* in every case to spring a surprise expert witness on *an unsuspecting defendant who had long since disclosed his own expert's prospective testimony.*" *Id.* (emphasis added).

Unlike the defendant in *Chin*, however, who timely disclosed his own expert and made all required expert disclosures prior to trial, *the defense in this case did not provide timely expert disclosures*. Indeed, Defense Counsel's actions caused the Government to file a motion seeking to exclude Defendant's experts. *(See* Docket Entry No. 63). On June 17, 2013 – the day before trial was to begin – Defense Counsel provided a witness list to the Government that listed two expert witnesses: 1) Mike Cherry; and 2) Manfred Schenk. In response to the Government's motion, also filed on June 17, 2013, Defense Counsel indicated that Defendant did not intend to call Mr. Cherry as a witness but that he may call Mr. Schenk as an expert witness at trial. Defendant's response brief then attempted to disclose the general nature of Mr. Schenk's testimony. Defendant's response did not dispute that the Government had previously requested expert disclosures, nor did it explain why Defense Counsel was providing expert disclosures the night before trial. During the course of trial, the Government worked with Defense Counsel to obtain the requisite disclosures and the Government ultimately withdrew its motion seeking to preclude Mr. Schenk from testifying at trial.

In addition, this is not a case wherein the Government had long ago known of its rebuttal witness. Unlike the government attorneys in *Chin* who had already retained their rebuttal witness prior to trial and knew his expected testimony, the Government's attorneys in this case located

10

and retained Mr. Smyk during the course of trial, after hearing Mr. Schenk's testimony.

Moreover, before Mr. Smyk's testimony began, this Court granted Defendant's request to take a forty-five minute break to allow him to prepare. It is apparent to this Court, from Defense Counsel's performance during trial and arguments made in the course of other motions, that Defense Counsel had immersed themselves in the underlying technologies at issue in this case. As such, Defense Counsel could adequately prepare for the rebuttal witness during that requested break in trial.

Accordingly, the Court will not grant a new trial based upon the Court's ruling allowing the Government to present its rebuttal witness.

### 2. Ruling Excluding Defense From Calling Alibi Witnesses

Second, Defendant contends that this Court erred by granting the Government's motion to exclude two alibi witnesses. In making this argument, Defendant incorporates his written response to the Government's motion.

In granting the Government's motion seeking to exclude the two alibi witnesses at issue, this Court explained:

> It is well-established that, "[g]iven the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate." *Williams v. Florida*, 399 U.S. 78, 81 (1970). As the United States Supreme Court has explained, "[t]he adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played." *Id*. at 82.
> Accordingly, Rule 12.1 of the Federal Rules of Civil Procedure provides that an "attorney for the government may request in writing that the defense notify an attorney for the government of any intended alibi defense. The request must state the time, date, and place of the alleged offense." Fed. R. Crim. P. 12.1(a)(1).
> . . . .
> Rule 12.1 also provides that the defendant has a continuing duty to disclose alibi witnesses. Fed. R. Crim. P. 12.1(C). Rule 12.1 provides that if a party fails to comply

11

with the rule, "the court may exclude the testimony of any undisclosed witness regarding the defendant's alibi." Fed. R. Crim. P. 12.1(e).

Thus, under Rule 12.1, "the court may exclude witnesses as a sanction for violation of the notice provisions of the rule, and a district court's decision to exclude witnesses is reviewed for abuse of discretion." *United States v. Watt*, 996 F.2d 1218, 1993 WL 190912 (6th Cir. 1993); *see also United States v. White*, 583 F.2d 899, 901-02 (6th Cir. 1978). Among the factors that should guide a district court's exercise of discretion in determining whether to exclude undisclosed alibi witnesses are: 1) the prejudice to the government from the failure to disclose; 2) the reasons for nondisclosure; 3) the extent that harm from nondisclosure is mitigated by subsequent events; and 4) the weight of evidence supporting the defendant's guilt. *Id.*

In the present case, the Government requested in writing – on March 19, 2013 – that Defendant notify it of any intended alibi witnesses. (Ex. A to Opinion & Order). As Defense Counsel acknowledged at the June 28, 2013, the Defense *has never* submitted a written response to that notice to the Government.

In fact, the Government only learned of the Defendant's intention to present James Reynolds and Larry Bullock as alibi witnesses during a conference in chambers, and only in response to an inquiry by the Court as to the expected nature and length of their testimony.

In response to the Court's inquiry, Defense Counsel stated that James Reynolds (Defendant's brother) and Larry Bullock worked for or with Defendant as painters and that they are expected to testify that Defendant was with them at Oakwood Hospital in Canton, Michigan on dates and times during May of 2011.

The Government then filed the instant motion. In response to the motion, Defendant asserts that the Government's request for alibi disclosures was "deficient" because the dates and times of the alleged offense that were provided were not specific enough. Defendant relies on *United States v. Bickman*, 491 F. Supp. 277 (E.D. Penn. 1980).

The Court finds Defendant's argument that the Government's request was deficient, and his reliance on *Bickman*, to be wholly without merit. The Government's request for alibi disclosures stated:

> Finally, the government renews its request for reciprocal discovery and notice of alibi. Specifically, pursuant to Federal Rule of Criminal Procedure 12.1, the United States demands written notice of intention to offer a defense of alibi, stating specifically the place or places at which the defendant claims to have been for the following dates and times:
>
> •   May 6, 2011, between 17:08 and 18:07;
> •   May 12, 2011, between 17:55 and 22:56;
> •   May 13, 2011, between 19:01 and 19:46;

12

- May 18, 2011 at 14:24;
- May 23, 2011 at 21:42 and 22:23;
- May 24, 2011 between 7:01 and 7:40, and 17:05;
- May 25, 2011 between 16:50 and 17:59.

The Government requests the names, address, and phone numbers of witness upon whom the defendant intends to rely.

(Ex. A to Opinion & Order). That request could not have been any more specific as to the dates and times provided. And unlike the situation in *Bickman*, the Government's request did not state vague or excessively long periods of time such that the request was, as a practical matter, akin to a broad discovery request or "fishing expedition." [2]

Accordingly, the Court finds that the Government filed a request for alibi disclosures in compliance with Fed. R. Crim. P. 12.1 but Defendant failed to comply with the rule.

(6/28/13 Opinion & Order, Docket Entry No. 80, at 5-8).

In his current motion, Defendant claims that "neither defense counsel nor the defendant, were aware of the precise timeline the government alleged the events occurred until after the testimony of Walker Sharp and Jason Skindell," and "[a]fter the testimony of Walker Sharp, the government failed to make an alibi request that aligned with the newly established timeline pursuant to his testimony." (Def.'s Br. at 4).

The Court finds this argument without merit. In its March 19, 2011 letter, the Government provided Defendant with seven dates and times in May of 2011. As this Court noted in it Opinion & Order, the Government could not have been any more specific as to the dates and times provided. Although the Government apparently had evidence that could

---

[2] *Bickman* can further be distinguished because the defendant in that case, after receiving a request for alibi disclosures that he deemed deficient, made a pretrial objection to the request. Here, Defendant did not do so.

13

establish that child pornography was uploaded or downloaded on additional dates, in presenting

its case the Government continued to focus on the dates and times provided in the March 19,

2011 letter – the dates in May of 2011.

During *cross-examination* of Walker Sharp, *Defense Counsel elicited* testimony regarding

additional dates in April of 2011, on which child pornography was uploaded or downloaded on

the computer at issue.  The Government's case, however, was not based on activity on those

dates in April of 2011.

And most significantly, in responding to the Government's motion, Defendant asserted

that his proposed alibi witnesses (Larry Bullock and James Reynolds) may "be able to testify that

Donald Reynolds worked nights with them painting Oakwood Hospital in *May* 2011."  (Docket

Entry No. 77 at 3) (emphasis added).  Defendant further asserted that records at Pittsburgh Paints

could corroborate their testimony by showing that Defendant "was purchasing paint for an

evening project in the area on multiple dates in *May* of 2011."  (*Id*. at 2) (emphasis added).

Defendant has not asserted, in either responding to the Government's motion during trial or in his

Motion for New Trial, that Larry Bullock of James Reynolds could provide any testimony about

Defendant's whereabouts in April of 2011.

The Court continues to conclude that it properly granted the Government's motion to

exclude Defendant's proposed alibi witnesses.

### 3.    The Government's Alleged Discovery Violation

Third, Defendant asserts that the Government committed a discovery violation

concerning exhibits that were used during Jason Skindell's testimony.  (Def.'s Br. at 4-5)

This Court instructed Counsel for the parties before trial began, and reminded them

14

during the course of trial, that the Court would be available before and after trial each day to address any issues that may arise and that all motions had to be in writing. (*See, e.g.* Docket Entry No. 60, wherein the Court stated that Counsel had "indicated that there will likely be additional issues that arise before and during trial" and ordering that **"any and all motions must be made IN WRITING and filed with the Court."**) (emphasis in original). Defendant did not file any motions during trial concerning this alleged discovery violation by the Government.

And as the Government notes, Defendant's motion does not identify which discovery rule or rules were allegedly violated, or how the alleged violation prejudiced the Defendant in light of the other evidence and testimony presented at trial.

Having considered Defendant's argument as to this issue, the Court concludes that Defendant is not entitled to a new trial based on the Government's alleged discovery violation.

### 4.    The Court's Comments During Skindell's Testimony

Fourth, Defendant asserts that certain comments made by this Court in the presence of the jury were improper because they bolstered the credibility of a witness and/or an exhibit. Specifically, Defendant notes that in discussing objections to the admission of work records with counsel, during the course of Jason Skindell's testimony, the Court commented that this trial "is a search for the truth." Defendant asserts that comment by the Court "arguably bolstered the credibility of Mr. Skindell and the work records the government presented." (Def.'s Br. at 5). In support of his position, Defendant directs the Court to *United States v. Anton*, 597 F.2d 371 (3d Cir. 1979) and *United States v. Porter*, 386 F.2d 270, 276 (6th Cir. 1967).

In *Anton,* where the defendant's credibility was vital to his defense, the trial court stated before the jury that the defendant's testimony was "completely lacking in credibility." *United*

*States v. Anton*, 597 F.2d at 374.  The Third Circuit held that statement by the trial court deprived the defendant of his right to have questions of credibility decided by a jury.

In *Porter,* the Sixth Circuit stated although "the federal view permits some comment on the evidence," the trial court's comments went beyond the "permissible limits" where the judge exhibited "a prosecutor's zeal" and his comments "could easily be construed as an expression of his belief that the defendant was guilty."  *United States v. Porter*, 386 F.2d at 276.

In response to Defendant's motion, the Government states that "the Court's comments that trial is 'a search for the truth' does not constitute bolstering, and is a far cry from informing the jury that the court finds a witness to be 'devoid of credibility.'" (*Id.* at 10-11).  The Court agrees.

There is nothing improper about the Court observing that a trial is a "search for the truth" because, as the Seventh Circuit has observed, "trials *are* searches for the truth."  *United States v. Harper*, 662 F.3d 958, 961 (6th Cir. 2011) (emphasis in original).  Indeed, both the Supreme Court and federal appellate courts "have repeatedly noted that criminal jury trials serve an important 'truth-seeking' *function." Id.* (citing *United States v. Mezzanatto,* 513 U.S. 196, 204-05 (1995) and *Jones v. Basinger*, 635 F.3d 1030, 1040-41 (7th Cir. 2011).  This Court "did no more than repeat that uncontroversial proposition."  *Harper*, 662 F.3d at 961.

Moreover, taken in context, this Court's comment cannot reasonably be construed as either bolstering the credibility of Mr. Skindell or the work records at issue; nor can the comment be construed as an expression of Defendant's guilt.

### 5.      The Court's Alleged Animosity Toward Defense Counsel

Defendant's Fifth and final argument is that he should be granted a new trial because this

Court displayed animosity toward Defense Counsel in front of the jury, which deprived him of

the right to a fair trial.  Defendant asserts:

> On more than one occasion, the Court refused to hear the objections of defense counsel in front of the jury.  Sometimes this occurred at side-bar while the jury was still in the courtroom.  For example, more than once the Court walked away from counsel as counsel was still speaking. On other occasions, the court precluded counsel from objecting on the record in open court in front of the jury.  Moreover, on one occasion at side-bar, in the presence of the jury, the Court struck the bench within inches of defense counsel's head, causing a loud audible noise.  The defendant respectfully submits these instances unfairly prejudiced the defendant.
> . . . .
> Moreover, the Court's apparent animosity toward defense counsel in the presence of the jury was a violation of due process that unfairly prejudiced the defendant and deprived him of the right to a fair trial in a fair tribunal.  See *Lyell v. Renico*, 470 F.3d 1177 (6th Cir. 2006).  *See also* Standard 6-3.4(a), *ABA Standards for Criminal Justice: Special Functions of the Trial Judge*, 3d ed.

(Def.'s Br. at 6).

In response to Defendant's motion, the Government asserts that this asserted ground for

relief has no merit:

> Trial in this matter was longer than the parties and the Court had anticipated.  The delay was caused by lengthy examinations, numerous objections, and frequent request for sidebars.  The Court gave both attorneys considerable leeway on direct and cross examination and entertained nearly every request for sidebar.  Attorneys for both sides raised numerous legal issues during the course of trial, and the Court permitted both parties to file motions as new issues developed.  The Court evaluated and considered all issues raised by the parties, and even gave the attorneys an open invitation to arrive at court at 7:30 a.m. to present any new issues outside of the presence of the jury.
> . . . .
> Despite the Court's meticulous and measured approach to the legal issues

17

raised by the parties, defense counsel was at times contentious with the Court.  On numerous occasions during trial and in the presence of the jury, defense counsel was extremely argumentative and rude when speaking to the Court.  Defense counsel refused to adhere to the Court's evidentiary rulings and frequently continued to argue with the Court after a ruling was made.  More than once, defense counsel ignored gentle warnings from the Court, and continued to ask improper questions of witnesses.

. . . .

It is an astonishing display of chutzpah[3] for defense counsel to claim that his client is entitled to a new trial because the Court had no choice but to reprimand him on occasion for his repeated misconduct.

(Govt.'s Br. at 11-12).

The United States Court of Appeals for the Sixth Circuit has summarized the standard that applies to this challenge as follows:

> Under *Liteky,* a judge's misconduct at trial may be "characterized as bias or prejudice" only if "it is so extreme as to display clear inability to render fair judgment," *Liteky*, 510 U.S. at 551, 114 S.Ct. 1147 (internal quotation marks omitted), so extreme in other words that it "display[s] a deep-seated favoritism or antagonism that would make fair judgment impossible," *id*. at 555, 114 S.Ct. 1147.  "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge . . . [But] they will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id*. (emphasis omitted).  "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display," by contrast, do not establish such bias or partiality."  *Id*. at 555-56, 114 S.Ct. 1147; *see also In re Murchison*, 349 U.S. at 136, 75 S.Ct. 623; *Offutt v. United States*, 348 U.S. 11, 17, 75 S.Ct. 11, 99 L.Ed. 11 (1954).

*Lyell*, 470 F.3d at 1186-87.

---

[3]"The 'classic definition' of chutzpah has been described as 'that quality enshrined in a man who, having killed his mother and father, throws himself on the mercy of the court because he is an orphan.'" *Motorola Credit Corp. v. Uzan*, 561 F.3d 123, 128 n.5 (2d Cir. 2009) (quoting Leo Rosten, The Joys of Yiddish, 92 (1968)).

As explained below, this Court's statements and actions during the course of trial were well within its discretion to control the proceedings and did not prejudice Defendant.

In arguing for a new trial, Defendant relies on *Lyell.* In that case, the trial judge presiding over a criminal case *sua sponte* assisted the prosecution, took over defense counsel's cross-examination of witnesses, stated or implied its disapproval of the defense theory, made disparaging remarks about defense counsel, including "calling him an actor, a child, silly and a smart aleck," and issued a contempt order against defense counsel in front of the jury. *Lyell,* 470 F.3d at 1187.

The facts in *Lyell* differ markedly from those in this case. Defense Counsel *do not* argue that this Court *sua sponte* assisted the prosecution, took over cross-examination of witnesses, stated or implied its disapproval of the defense's theory that someone other than Defendant was responsible for the child pornography on Defendant's computer, or made disparaging remarks about either of Defendant's attorneys. Rather, Defendant takes issue with the manner in which this Court dealt with objections made by Defense Counsel during the course of trial.

A trial judge "is not a mere moderator, but is the governor of the trial for purposes of assuring its proper conduct and of determining questions of law." *Quercia v. United States*, 289 U.S. 466, 469 (1933); *see also United States v. Hickman*, 592 F.2d 931, 932 (6th Cir. 1979). It is the function of a trial judge to "conduct the trial in an orderly way with a view to eliciting the truth and to attaining justice between the parties. It is his duty to see that the issues are not obscured and that the testimony is not misunderstood." *Id*. at 933.

In determining whether a trial judge oversteps, several factors may be relevant, including the length and nature of the trial and the conduct of counsel. *Id*. "In a lengthy, complex trial,

19

intervention by the judge is often needed to clarify what is going on." *Id.* (citations omitted); *see also United States v. Hynes*, 467 F.3d 951, 958 (6th Cir. 2006) (A trial court does "not err in occasionally interrupting the proceedings to clarify the law or the facts, require precise questioning from defense counsel, or speed the trial along."). The conduct of counsel is also an important consideration. "If the attorneys in a case are unprepared or obstreperous, judicial intervention is often called for." *Hickman*, 592 F.2d at 933.

No doubt this was a contentious trial. Attorneys on both sides were zealous advocates for their clients and worked extraordinarily hard in this case. The trial involved complex issues and technologies and lasted more than two weeks, longer than anyone had anticipated. As such, intervention by this Court was required throughout the trial.

In addition, Defense Counsel's conduct was, at times during trial, obstreperous. At various points during the course of trial, Defense Counsel persisted in asking repetitive questions, repeatedly sought to elicit irrelevant testimony, or disregarded the rulings made by this Court. Thus, Defense Counsel's actions elicited the very rulings and actions by this Court of which he now complains. *See United States v. Weiss*, 491 F.2d 460, 468 (2d Cir. 1974) (cited with approval in *United States v. Worthington,* 698 F.2d 820 (6th Cir. 1983)) (noting that the challenged actions by the trial court were "clearly provoked by defense counsel's unnecessary comments or statements in connection with voicing of objections or by their pressing objections or arguments that were frivolous, repetitious, or in disregard of the court's earlier rulings," and stating that when defense counsel so acts, "he must expect that once the trial judge has made his basic ruling successive objections by the government will undoubtedly be sustained" and it is not surprising "that such wasteful tactics will lead a trial judge, during the heat of a nine-day trial,

20

sometimes to become impatient" because judges "do not possess limitless ability, once passion is aroused, to resist provocation."**).**  This Court's actions and rulings did not amount to a denial of a fair trial.

Moreover, at the close of the case this Court instructed the jurors that they were to make their decision based solely on the evidence and that the Court's comments and rulings during the course of the trial, and the parties' objections and questions, were not evidence.  (*See* Jury Instructions, Docket Entry No. 86, at 4-6).  The jury is presumed to follow the jury instructions. *Hynes*, 467 F.3d at 957.

Accordingly, the Court shall not grant a new trial based on this asserted ground for relief.

## III.    The Government's Motion To Detain Defendant Pending Sentencing

Following the jury verdict, the Government filed a Motion To Detain Defendant Pending Sentencing, directing the Court to 18 U.S.C. § 3143(a)(2).

In response, Defendant asserts that the Court should deny the motion because: 1) the Court should find that there is a substantial likelihood that his Renewed Motion for Acquittal and/or his Motion for New Trial will be granted; and 3) even if the Court finds otherwise, the Court should nevertheless find that exceptional circumstances exist, pursuant to 18 U.S.C. § 3145(c), that make detention here inappropriate.

The Government's Motion to Detain is based on 18 U.S.C. § 3143(a)(2), which provides that:

> (2) The judicial officer shall order that a person who has been found guilty of an offense in a case described in subparagraph (A), (B), or (C) of subsection (f)(1) of section 3142 and is awaiting imposition or execution of sentence to be detained unless –

21

2:12-cr-20843-SFC-MAR   Doc # 106   Filed 09/04/13   Pg 22 of 26   Pg ID 1505

(A)     (i) the judicial officer finds there is a substantial likelihood that a motion
        for acquittal or new trial will be granted; or

        (ii) an attorney for the Government has recommended that no sentence of
        imprisonment be imposed on the person; *and*

(B) the judicial officer finds by clear and convincing evidence that the person is
not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis added).  Subparagraph (A) of subsection (f)(1) of Section 3142

includes "a crime of violence."  18 U.S.C. § 3142(f)(1)(A).   Under 18 U.S.C. § 3156(a)(4)(C),

the term "crime of violence," as used in Section 3143, includes "any felony under chapter 109A,

110, or 117."

Here, Defendant was convicted of violating 18 U.S.C. §§ 2252A(a)(2) and (a)(5)(B).

Section 2252A is contained in Chapter 110, which is titled "Sexual Exploitation and Other

Abuse of Children."  And the Government will not be recommending that no sentence of

imprisonment be imposed on Defendant. (*See* Govt.'s Br. at 2, stating that "Defendant is facing a

mandatory minimum term of imprisonment of five years, and the appropriate guideline range will

be dramatically higher than 60 months.")

Accordingly, under § 3143(a)(2), Defendant shall be detained pending sentencing unless

this Court finds: 1) there is a substantial likelihood that a motion for acquittal or new trial will be

granted; *and* 2) by clear and convincing evidence that Defendant is not likely to flee or pose a

danger to any other person or the community.

As stated above, however, this Court is denying Defendant's Renewed Motion for

Acquittal and his Motion for New Trial.

Nevertheless, Defendant argues that detention is not mandatory under § 3143(a)(2)

because the Court may nevertheless use its discretion pursuant to 18 U.S.C. § 3145(c) to

determine if exceptional reasons exist that justify release pending sentencing.  (Def.'s Br. at 4).

The Sixth Circuit decisions that Defendant directs the Court to on this issue are: 1) *United States*

*v. Christman*, 596 F.3d 870 (6th Cir. 2010); and 2) *United States v. Cook*, 42 Fed. App'x 803

(6th Cir. 2002).

   In *Christman*, the defendant acknowledged that his guilty plea to drug offenses mandated

his detention under § 3143(a)(2) but argued that he may be released pending sentencing for

exceptional reasons under § 3145(c).  The district court concluded that detention was mandatory

and that it lacked authority under § 3145(c) to consider whether the defendant established that

exceptional reasons warranted his release pending sentencing.  The Sixth Circuit reversed,

stating:

> Although we have never explicitly held in a published decision that the district
> court has authority to release a defendant being detained pursuant to § 3143(a)(2)
> upon a showing of "exceptional reasons" under § 3145(c), we have reached that
> conclusion in an unpublished decision.  *United States v. Cook*, 42 Fed. Appx. 803,
> 804 (6th Cir. 2002).

*Id*. at 870.  The court held that the district court erred in not considering whether the defendant

established exceptional reasons to support his release pending sentencing and reversed and

remanded, with direction to the district court to consider whether exceptional reasons warranted

release pending sentencing.  *Id.* at 871.

   In light of the above authority, this Court will consider whether exceptional

circumstances warrant Defendant being released pending sentencing.

   Defendant contends that the exceptional circumstances that warrant his release pending

sentencing are: 1) that he is the owner of a small painting business and he needs more time to

23

create a succession plan for his business and finish pending painting jobs: 2) that his mother has

lupus and requires regular injections in her eyes and spine and Defendant wishes to "relocate to

his mother's home [which is in Jerome, Michigan] pending his sentence so that he can aide in her

care,"; and 3) his adult daughter Arica suffers from mental illness (bi-polar disorder), has

attempted to commit suicide and he therefore needs "time to make arrangements to ensure that

Arica will be cared for if her illness progresses."  (Def.'s Br. at 7-8).

   While unfortunate, hardships in being unable to assist or care for family members and

interruptions to work and business relationships because of a defendant being incarcerated are

not unique or exceptional.  As thoughtfully articulated by the district court in *Cameron*:

> [A] trial judge never sentences just the defendant. Invariably, the imposition of a
> sentence profoundly affects an entire family and often an entire community.  The
> loss by incarceration of a breadwinner, a spouse, a parent, a child, an employee, a
> friend and the rippling of this loss into other relatives and into the community are
> among the most regrettable consequences of crime . . . Yet, each person who
> commits a serious crime accepts the risk of conviction and incarceration and the
> trouble he will visit upon himself, and his family, friends, and community, and if
> family concerns trumped mandatory detention, exceptions would become the rule.

*United States v. Cameron*, 756 F. Supp.2d 148, 153-54 (D. Me. 2010).

Having considered Defendant's arguments, this Court concludes that Defendant has not

established "that there are exceptional reasons why his detention would not be appropriate."  18

U.S.C. § 3145(c).  The Court shall therefore grant the Government's Motion to Detain Defendant

Pending Sentencing, revoke Defendant's bond, and order Defendant remanded to the custody of

the United States Marshal.

### IV.   Defendant's Motion To Modify Bond Address

On August 3, 2013, Defendant filed a Motion to Modify his Bond Address, so that he

24

can move to his mother's residence in Jerome, Michigan and reside there pending sentencing.

Given that this Court is revoking Defendant's bond, the Court shall also deny Defendant's Motion to Modify his Bond Address.

## CONCLUSION & ORDER

For the reasons set forth above, the Court finds that the record contains evidence from which the jury could find beyond a reasonable doubt that all the elements of the crimes defined by 18 U.S.C. § 2252A(a)(2) and § 2252A(a)(5)(B) were satisfied. The Court also finds that the verdict was not against the manifest weight of the evidence, nor has a substantial legal error occurred. The Court therefore ORDERS that Defendant's: 1) Renewed Motion for Judgment of Acquittal (Docket Entry No. 93) is DENIED; and 2) Motion for New Trial (Docket Entry No. 94) is DENIED.

IT IS FURTHER ORDERED that the Government's Motion to Detain Defendant Pending Sentencing (Docket Entry No. 87) is GRANTED and the Court hereby REVOKES DEFENDANT'S BOND and ORDERS DEFENDANT REMANDED to the custody of the United States Marshal.

IT IS FURTHER ORDERED that Defendant's Motion to Modify Bond Address is DENIED.

IT IS SO ORDERED.

S/Sean F. Cox_____
Sean F. Cox
United States District Judge

Dated:  September 4, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on

25

September 4, 2013, by electronic and/or ordinary mail.

S/Jennifer McCoy
Case Manager